UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| -against- | 23 Civ. 631 (VM) |
| HIGH LIFE LLC, | |
| Defendant. | |

WHEREAS, this Stipulation and Order of Settlement and Dismissal ("Stipulation") is entered into by and among plaintiff the United States of America (the "United States" or "Government"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York; and defendant High Life LLC ("High Life" or "Defendant," and together with the Government, the "Parties"), by its authorized representatives;

WHEREAS, Defendant is a company headquartered in New York, New York, that sells apparel that it imports from abroad;

WHEREAS, the Government alleges that from January 21, 2016, through June 1, 2016 (the "Covered Period"), Defendant violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*., by materially underreporting to the United States Customs and Border Protection ("CBP") the value of merchandise imported into the United States and knowingly causing sixty-seven (67) customs entry forms to be presented to CBP that contained inaccurate valuations of the merchandise and thereby avoided paying the customs duties owed. The conduct described in this Paragraph is the "Covered Conduct" for purposes of this Stipulation;

WHEREAS, contemporaneous with the filing of this Stipulation, the Government is filing its complaint in the above-referenced action ("Government Complaint"), in which it asserts claims against Defendant under the FCA and common law for the Covered Conduct;

1

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable resolution addressing the claims asserted against Defendant in the Government Complaint for the Covered Conduct;

NOW, THEREFORE, upon the Parties' agreement IT IS HEREBY ORDERED that:

### TERMS AND CONDITIONS

1.      The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2.      Defendant admits, acknowledges and accepts responsibility for the following conduct (the "Admitted Conduct"):

    a.  In December 2015, CBP detained certain shipments of apparel sent by foreign vendors (the "Vendors") to High Life and requested certain information and documentation related to the shipments and corresponding customs entries.

    b.  Following the detainment of these shipments, High Life decided to transition its business model from purchasing imported goods on Landed Duty Paid ("LDP") terms, to Free on Board ("FOB") terms.

    c.  Under the prior LDP model, the Vendors had assumed importation responsibilities, and High Life paid the Vendors a price that included all costs associated with importing the merchandise, including the costs of freight and customs duties. Under the new FOB model, High Life assumed importation responsibilities and paid the Vendors a price that did not include either customs duties or freight.

d.  At the time High Life made the decision to transition its business model from LDP to FOB, the Vendors and High Life had already executed certain purchase orders on LDP terms, for which the merchandise had not yet shipped. High Life and the Vendors had already agreed on an LDP price for the merchandise included in these orders, and some of the merchandise was already in production.

e.  Once High Life transitioned to an FOB model, it assumed importation responsibilities for the shipments. As the importer of record, High Life could then, if certain criteria were met, declare the value of the imported goods based on the price the Vendors paid the factories ("First Sale Price"), instead of the price High Life paid the Vendors.

f.  However, High Life could only declare the First Sale Price as the value of the orders if the goods were the subject of a bona fide sale between the Vendors and the factories, clearly destined for export to the United States, and the factories and the Vendors dealt with each other at arm's length, in the absence of any non-market influences that affected the legitimacy of the sales prices.

g.  In transitioning from LDP to FOB terms, High Life developed a formula that worked backwards from a previously negotiated LDP price to calculate what High Life wanted the FOB price and First Sale Price to be, and then used that First Sale Price to declare the values of 67 shipments made during the Covered Period (the "Subject Orders"). High Life requested the Vendors to delay shipping merchandise while the First Sale

3

Prices for the Subject Orders were finalized. Indeed, on December 24, 2015, High Life's Production Manager asked the Vendors to "hold as many shipments as possible until we finalize the First Sale."

h.  Beginning in late December 2015 and continuing through January 2016, High Life instructed the Vendors to apply High Life's formula to calculate the First Sale Price that High Life would report to CBP for purposes of calculating the duties owed by High Life.

i.  On January 4, 2016, High Life's Production Manager sent an e-mail to the Vendors that directed them to provide by the end of the day the FOB, First Sale, and estimated freight cost, and further stated that the three broken down should add up to the LDP price agreed upon by High Life and the Vendors.

j.  After the Vendors e-mailed spreadsheets to High Life that purported to reflect the First Sale Prices for the Subject Orders, a member of High Life's production team sent an e-mail to the Vendors directing them to "rework your FOB and [First Sale Price] based on the Highlife Estimate freight." High Life attached to this e-mail a spreadsheet that contained High Life's estimated freight costs to import the Subject Orders.

k.  Following their receipt of these e-mails, the Vendors replied to High Life within 24 hours with spreadsheets that included revised First Sale Prices for the merchandise included in the Subject Orders.

l.   When importing the Subject Orders, High Life ultimately declared to CBP that the duties owed should be calculated based on the First Sale Prices the Vendors reported to High Life.

m.   If High Life had paid duties to CBP based on the prices High Life itself paid for the merchandise included in the Subject Orders, instead of calculating the duties based on the purported First Sale Prices reported by the Vendors pursuant to High Life's instructions, High Life would have paid significantly higher customs duties for the Subject Orders.

3.   Defendant shall pay to the Government within fourteen (14) business days of the Effective Date (defined below in Paragraph 23) the sum of $1,300,000 (the "Settlement Amount") in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York. Of the Settlement Amount, $650,000 plus applicable interest constitutes restitution to the United States.

4.   Defendant agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Stipulation. Upon reasonable notice, Defendant shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendant further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

5.      Subject to the exceptions in Paragraph 7 (concerning reserved claims) below and subject to Paragraph 8 (concerning default) and Paragraph 11 (concerning bankruptcy proceedings) below, and conditioned on Defendant's full compliance with the terms of this Stipulation, including full payment of the Settlement Amount to the United States pursuant to Paragraph 3 above, the United States releases Defendant, including its subsidiaries and corporate predecessors, successors and assigns, from any civil or administrative monetary claim that the United States has for the Covered Conduct under the FCA, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801-3812, 19 U.S.C. §§ 1592 and 1595a of the Tariff Act of 1930, as amended, and the common law theories of fraud, payment by mistake, and unjust enrichment. For avoidance of doubt, this Stipulation does not release any current or former officer, director, employee, or agent of Defendant from liability of any kind.

6.      Defendant fully and finally releases the United States, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, employees, servants, or agents related to the Covered Conduct or the United States' investigation, prosecution and settlement thereof.

7.      Notwithstanding the releases given in Paragraph 5 above, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

        a.   any liability arising under Title 26, United States Code (Internal Revenue Code);

    b.   any criminal liability;

    c.   except as explicitly stated in this Stipulation, any administrative liability or enforcement right, including but not limited to the suspension or debarment rights of any federal agency;

    d.   any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.   any liability based upon obligations created by this Stipulation; and

    f.   any liability of individuals.

8.    Defendant shall be in default of this Stipulation if Defendant fails to make the required payment set forth in Paragraph 3 above on or before the due date for such payment, or if it fails to comply materially with any other term of this Stipulation that applies to it ("Default"). The Government will provide a written Notice of Default to Defendant of any Default in the manner set forth in Paragraph 22 below. Defendant shall then have an opportunity to cure the Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due and paying any additional interest accruing under the Stipulation up to the date of payment. If Defendant fails to cure the Default within seven (7) calendar days of receiving the Notice of Default ("Uncured Default"), interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance). In the event of an Uncured Default, Defendant shall agree to the entry of a consent judgment in favor of the United States against Defendant in the amount of the Settlement Amount as attached hereto as Exhibit A. Defendant also agrees that if it fails to cure the Default, the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Stipulation, and reinstate the claims asserted against Defendant in

the Government Complaint, or bring any civil and/or administrative claim, action, or proceeding against Defendant for the claims that would otherwise be covered by the release provided in Paragraph 5 above, with any recovery reduced by the amount of any payments previously made by Defendant to the United States under this Stipulation; (ii) take any action to enforce this Stipulation in a new action or by reinstating the Government Complaint; (iii) offset the remaining unpaid balance from any amounts due and owing to Defendant and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Defendant agrees immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Stipulation pursuant to this paragraph, Defendant waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that (i) are filed by the United States against Defendant within 120 days of written notification that this Stipulation has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on January 13, 2020. Defendant agrees not to contest any offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

9.      Defendant, having truthfully admitted to the Admitted Conduct set forth in Paragraph 2 hereof, agrees it shall not, through its attorneys, agents, officers, or employees, make any public statement, including but not limited to, any statement in a press release, social media forum, or website, that contradicts or is inconsistent with the Admitted Conduct or suggests that the Admitted Conduct is not wrongful (a "Contradictory Statement"). Any Contradictory Statement by Defendant, its attorneys, agents, officers, or employees, shall constitute a violation of this Stipulation, thereby authorizing the Government to pursue any of the remedies set forth in Paragraph 8 hereof, or seek other appropriate relief from the Court. Before pursuing any remedy, the Government shall notify Defendant that it has determined that Defendant has made a Contradictory Statement. Upon receiving notice from the Government, Defendant may cure the violation by repudiating the Contradictory Statement in a press release or other public statement within four business days. If Defendant learns of a potential Contradictory Statement by its attorneys, agents, officers, or employees, Defendant must notify the Government of the statement within 24 hours. The decision as to whether any statement constitutes a Contradictory Statement or will be imputed to Defendant for the purpose of this Stipulation, or whether Defendant adequately repudiated a Contradictory Statement to cure a violation of this Stipulation, shall be within the sole discretion of the Government. Consistent with this provision, Defendant may raise defenses and/or assert affirmative claims or defenses in any proceeding brought by private and/or public parties, so long as doing so would not contradict or be inconsistent with the Admitted Conduct.

10.     Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment

of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

11.     In exchange for valuable consideration provided in this Stipulation, Defendant acknowledges the following:

a.  Defendant has reviewed its financial situation and warrants that it is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

b.  In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendant, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.  The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d.  The Parties do not intend to hinder, delay, or defraud any entity to which Defendant was or became indebted on or after the date of any transfer contemplated in this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

e.  If Defendant's obligations under this Stipulation are avoided for any reason (including but not limited to through the exercise of a trustee's avoidance

powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Defendant or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Defendant's debts, or to adjudicate Defendant as bankrupt or insolvent, or seeking appointment of a receiver, trustee, custodian, or other similar official for Defendant or for all or any substantial part of Defendant's assets:

    (1)    the United States may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendant for the claims that would otherwise be covered by the release provided in Paragraph 5 above; and

    (2)    the United States has an undisputed, noncontingent, and liquidated allowed claim against Defendant in the amount of $1,300,000, less any payments received pursuant to the Stipulation, provided, however, that such payments are not otherwise avoided and recovered from the United States by Defendant, a receiver, trustee, custodian, or other similar official for Defendant.

f.   Defendant agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 11(e) above is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Defendant shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents

to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Defendant waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Defendant that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on January 13, 2020.

12.   Defendant agrees to the following:

a.   Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendant and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)   the matters covered by this Stipulation;

(2)   the United States' audit(s) and civil investigation(s) of the matters covered by this Stipulation;

(3)   Defendant's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Stipulation (including attorney's fees);

(4)   the negotiation and performance of this Stipulation; and

(5)   the payment Defendant makes to the United States pursuant to this Agreement,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs will be separately determined and accounted for by Defendant, and Defendant shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Within 90 days of the Effective Date of this Stipulation, Defendant shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendant or any of its subsidiaries or affiliates from the United States. Defendant agrees that the United States, at a minimum, shall be entitled to recoup from Defendant any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendant's books and records and to disagree with any calculations submitted by Defendant or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendant, or the effect of any such Unallowable Costs on the amount of such payments.

13.    This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity except as otherwise provided herein.

14.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

15.     Any failure by the Government to insist upon the full or material performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Stipulation.

16.     This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York.

17.     For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18.     This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written consent of the Parties. No prior agreements, oral representations or statements shall be considered part of this Stipulation.

19.     The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and the entities indicated below.

20.     This Stipulation is binding on Defendant's successors, transferees, and assigns.

21.     This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. E-mails that attach signatures in

PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

22.     Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand, express courier, or e-mail transmission followed by postage-prepaid mail, and shall be addressed as follows:

TO THE UNITED STATES:

Anthony J. Sun
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Email: anthony.sun@usdoj.gov

TO DEFENDANT:

Alan R. Klestadt, Esq.
Kevin W. Leonard, Esq.
Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP
599 Lexington Avenue
36th Floor
New York, New York 10022
Email: aklestadt@GDLSK.com
        kleonard@GDLSK.com

23.     The effective date of this Stipulation is the date upon which the Stipulation is approved by the Court (the "Effective Date").

Agreed to by:

**THE UNITED STATES OF AMERICA**

Dated: New York, New York
       January 25, 2023

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   _____

JESSICA JEAN HU
ANTHONY J. SUN
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.:   (212) 637- 2726 / 2810
Email: jessica.hu@usdoj.gov
        anthony.sun@usdoj.gov

*Attorneys for the United States of America*

**DEFENDANT HIGH LIFE LLC**

Dated: New York New, York
     January 25, 2023

                      GRUNFELD,  DESIDERIO,  LEBOWITZ,
                      SILVERMAN & KLESTADT LLP

By: _____

                      Alan R. Klestadt, Esq.
                      Kevin W. Leonard, Esq.
                      599 Lexington Avenue
                      36th Floor
                      New York, New York 10022
                      Email: aklestadt@GDLSK.com
                            kleonard@GDLSK.com

                      *Attorneys for High Life LLC*

Dated: New York, New York
     January __, 2023

                      HIGH LIFE LLC

By: _____

                      ISAAC LEVY
                      President, High Life, LLC

17

SO ORDERED:

_____

HON. VICTOR MARRERO
UNITED STATES DISTRICT JUDGE


Dated:  January 30, 2023